IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NASSER DJADALIZADEH,**<br><br>     **Plaintiff,**<br><br>    v.<br><br>**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**<br><br>     **Defendant.** | Case No. 12 C 6096<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nasser Djadalizadeh applied for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. An administrative law judge found that he is not disabled. Plaintiff asks this Court to reverse that decision or remand the matter to the Commissioner. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted.

**I. BACKGROUND**

Plaintiff Nasser Djadalizadeh ("Djadalizadeh") filed his initial application for Supplemental Security Income ("SSI") benefits on June 25, 2009. Certified Copy of Administrative Record, ECF No. 10 ("R.") at 159-64. The Commissioner denied his application initially and on reconsideration. Djadalizadeh

requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 1, 2011.

At the hearing, the ALJ elicited testimony from Djadalizadeh, a psychologist expert, and a vocational expert. Djadalizadeh testified that he has a high school education and has been taking some classes at a local college. He was 38 years old at the time of the hearing. He has worked a number of unskilled jobs, recently through temporary placement agencies. He told the ALJ about his history of alcohol and drug abuse, which led ultimately to his dishonorable discharge from the United States Navy. Djadalizadeh explained that he has suffered from depression and anxiety and struggles to organize his daily affairs; for example, he has difficulty remembering to take his medication. He lives in a structured environment where staff members check on him regularly and counsel him to complete basic tasks. Recently, he was treated for a sarcoma, but the treatment appears to have been successful, as the record shows no indication of lingering effects or any need for further treatment.

Dr. Oberlander, the psychologist expert, reviewed Djadalizadeh's file and listened to his testimony. Dr. Oberlander testified that, according to treating sources and Djadalizadeh's medication history, Djadalizadeh was under treatment for a depressive disorder. Djadalizadeh also appeared to suffer from an anxiety disorder, although that disorder was not being addressed by

his treating sources. Dr. Oberlander indicated that there was some evidence that Djadalizadeh suffered from a personality disorder, although not one that fit the Commissioner's listing criteria. He also noted issues related to substance abuse and said that it appeared that Djadalizadeh had been sober for the past two years. In his view, Djadalizadeh was living in a group home not because of his psychiatric disability, but for economic reasons. Based on his review of the record, Dr. Oberlander did not think that Djadalizadeh's impairments, considered alone or in combination, met or medically equaled any of the Commissioner's listing of impairments. Dr. Oberlander opined that Djadalizadeh retained the capacity for understanding, retaining, and executing simple, repetitive work activity but would need a job in a well-defined work setting that required no more than occasional contact with the public.

The Vocational Expert ("VE") testified that if Djadalizadeh were limited to unskilled work with no more than occasional contact with large groups of people, he could perform his past work as a store laborer.

In a written decision, the ALJ denied Djadalizadeh's claim. Following the appropriate five-step framework, the ALJ found at step one that Djadalizadeh had not engaged in substantial gainful activity since the application date. R. at 92. At step two, the ALJ determined that Plaintiff suffers from four severe impairments:

mood disorder, anxiety disorder, personality disorder, and substance addiction disorder. *Id.* At step three, the ALJ concluded that Djadalizadeh does not have an impairment or combination of impairments that meets or medically equals one of the Commissioner's listed impairments. R. at 93 The ALJ determined that Djadalizadeh has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels," subject to the limitation that "he is unable to perform more than simple, repetitive work tasks; unable to tolerate more than occasional interaction with large groups of people; and unable to independently plan work tasks." R. at 95. At step four, the ALJ found that Djadalizadeh can perform his past relevant work as a store laborer. R. at 97.

## II. LEGAL STANDARD

To establish a disability, a claimant must demonstrate that he has a medically determinable physical or mental impairment, expected to last at least twelve months or result in death, that rendered him unable to engage in substantial gainful work. 42 U.S.C. § 423(d). To determine whether a claimant is disabled, the Commissioner utilizes a sequential evaluation process that asks five questions: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a

conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520. The claimant bears the burden on the first four questions, but the burden rests with the Commissioner on the fifth step. *Briscoe ex. rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005).

Where, as here, the Commissioner's Appeals Council denies review, the ALJ's decision stands as the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. The Social Security Act authorizes this Court to review the Commissioner's final decision to deny benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing Court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). The Court does not reconsider facts or determine credibility. *Id.*

### III. ANALYSIS

#### A. Step Three

Djadalizadeh takes issue with the ALJ's step three conclusion that his impairments do not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ referenced Listings 12.04, 12.06, 12.08, and 12.09, but

Plaintiff challenges the ALJ's conclusion only with respect to Listing 12.04 for affective disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04 ("Listing 12.04").

Listing 12.04, composed of three paragraphs, is satisfied when the claimant meets the requirements of both Paragraphs A and B or the requirements of Paragraph C. *Id.* Djadalizadeh does not dispute the ALJ's conclusion that paragraph B is not met. He takes issue, however, with the ALJ's analysis of Paragraph C. That paragraph requires that the claimant establish one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04(c).

The ALJ's step three analysis spans two pages and analyzes the consulting physician's reports, the impartial medical expert's testimony, Djadalizadeh's treatment records, and Djadalizadeh's testimony regarding his structured living environment and impaired social functioning. R. at 93-95. The ALJ found "no evidence of any episodes of decompensation or deterioration," R. at 95, and

Plaintiff does not argue otherwise, ruling out Subparagraph 1. The ALJ attributed Djadalizadeh's housing situation, relevant to Subparagraphs 2 and 3, to his "lack of income and unemployment," not any disabling psychiatric problems. R. at 95. That finding is supported by Dr. Oberlander's testimony that Djadalizadeh was living in a structured environment for "economic reasons." R. at 77. Evidence that Djadalizadeh's need to live in a structured environment derived not from his affective disorder but from his economic circumstances would tend to show that Subparagraphs 2 and 3 are not met.

Djadalizadeh argues that the ALJ failed to discuss various factors that prove that Listing 12.04(c) is met. But the ALJ was "not required to provide a complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004). It was reasonable for the ALJ to credit the psychological expert's testimony. Thus, the ALJ's conclusion – that Paragraph C is not met – is supported by substantial evidence.

### B.  Djadalizadeh's Credibility

The ALJ must support an adverse credibility finding with "specific reasons that are supported by the record," and a reviewing Court will not overturn an ALJ's credibility determination unless it is "patently wrong." *Skarbek v. Barnhart,* 390 F.3d 500, 504-05 (7th Cir. 2004).

After assessing Djadalizadeh's residual functional capacity, the ALJ explained that Djadalizadeh's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. at 96. The Seventh Circuit has described this phrasing as "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony." *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Court explained that "the passage implies that ability to work is determined first and is then used to determine the claimant's credibility," which "gets things backwards." *Id.* The Court went on to note a number of inconsistencies between the ALJ's credibility finding and the medical evidence, then remanded so the ALJ could "build a bridge between the medical evidence . . . and the conclusion" regarding the claimant's RFC. *Id.* at 649.

The Court recognizes that the ALJ's opinion was issued in March 2011, ten months before the Seventh Circuit's admonishment in *Bjornson*. Nonetheless, as in *Bjornson,* the ALJ's boilerplate language gives the impression the ALJ erred by determining the claimant's RFC first and then adjusting the credibility finding to match the RFC. In addition, because the ALJ did not identify the specific inconsistencies that led him to discredit Djadalizadeh's testimony, the ALJ's reasoning on the credibility issue remains opaque, which deprives both the claimant and this reviewing Court

of the ability to determine the ALJ's precise rationale. *See, Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (explaining that the ALJ's determination regarding claiming credibility should "make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

Despite this shortcoming, the ALJ supported his RFC assessment with Djadalizadeh's medical history and the expert testimony. The ALJ determined that Djadalizadeh, despite his impairments, has the residual functional capacity to perform a full range of work, subject to several limitations. R. at 95. That conclusion is supported throughout the record, and Djadalizadeh does not appear to take issue with the RFC assessment itself.

In addition, Djadalizadeh does not cite, and the Court could not find, any inconsistencies between Djadalizadeh's testimony at his hearing and the ALJ's assessment of his RFC. Though possibly lost in the boilerplate, the ALJ's decision states that the credibility finding is adverse only to the extent that Djadalizadeh's statements are inconsistent with his RFC. If there are no inconsistencies, then it is not clear that the ALJ actually made an adverse credibility determination. Thus, the inclusion of the boilerplate is somewhat bewildering, but also harmless. The Seventh Circuit has explained that the inclusion of this "unhelpful boilerplate" does not always require remand. *Filus v. Astrue,* 694

F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."). Such is the case here: the ALJ's assessment of Djadalizadeh's RFC is grounded in the evidence in the record, and thus the ALJ's inclusion of distracting language does not require remand. *See also, Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) ("Though the ALJ's credibility determination was not flawless, it was far from 'patently wrong.'").

### C. Weight Attributed to the Treating Therapist

Plaintiff argues that the ALJ erred by failing to indicate how much weight he attributed to the opinion of Michael Malone, Plaintiff's treating therapist. Malone opined that Djadalizadeh was unable to function in a competitive work setting four eight hours per day, five days per week. R. at 491. Malone indicated his belief that Djadalizadeh's illnesses "markedly restrict [his] daily activities." R. at 490.

Djadalizadeh argues that the ALJ should have accorded controlling weight to Malone's opinion because Malone is his treating therapist. However, only "acceptable medical sources" can be considered treating sources "whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Malone is a therapist, which is not an "acceptable medical source" under the regulations. 20 C.F.R. § 416.913(a). His opinion falls into the category of "other

sources" listed in 20 C.F.R. § 416.913(d)(1). The ALJ must "consider all relevant evidence in an individual's case record." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). But the regulations distinguish between what the ALJ must consider and what the ALJ must explain in the decision: the ALJ need only "ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.*

Here, the ALJ referenced Malone's opinions in his decision and noted the inconsistencies between Malone's report and the rest of the evidence. R. at 96. Specifically, Malone's opinion was based on his finding that Djadalizadeh's anxiety symptoms were exacerbated by his cancer treatment. R. at 490. But the sarcoma appears to have been treated fully, and as the ALJ explained, "the medical record fails to document any actual treatment for cancer or that the condition and its limiting [e]ffects satisfied the duration requirement." R. at 96. In addition, Djadalizadeh "testified that he has no current issues related to his cancer and has experienced no residuals or recurrence." R. at 96. For that reason, and because Malone was unable to review the entire medical record and listen to Djadalizadeh's testimony, the ALJ credited the medical expert, Dr. Oberlander, instead of Malone. No more was required.

### D. Past Relevant Work

At step four, the ALJ found that Djadalizadeh was "capable of performing past relevant work as a store laborer" because the demands of that work "are not inconsistent with [his] residual functional capacity." R. at 97. In reaching that conclusion, the ALJ accepted the vocational expert's testimony that Djadalizadeh had worked as a store laborer over "a wide variety of time frames." R. at 58, 97. The ALJ had asked the VE to discuss only those jobs that do not require the worker to "do any kind of individual planning" or have more than occasional contact with large groups of people. R. at 55-56.

Djadalizadeh does not oppose the ALJ's conclusion that he can work as a store laborer; rather, he contends that the ALJ erred in finding that his prior work was "past relevant work," which, at Step Four, it must be. 20 C.F.R. § 404.1520. "Past relevant work" is a term of art, defined by the regulations as work that "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity [SGA]." SSR 82-62, 1982 WL 31386, at *1 (Jan. 1, 1982).

According to the "Full DIB Review Sheet" ("DIB sheet"), Djadalizadeh earned $9,075.69 in 1999 working for "Luxottica Retail North America," with a location listed as "Mason, Ohio." R. at 171. In the middle of a discussion of his work as a store laborer, Djadalizadeh testified that he worked for several temporary

employment services in North Chicago and Waukegan, Illinois. R. at 58. Thus, Djadalizadeh argues that "based on the name and location of the 1999 work, those earnings do not appear to be the store laborer job." ECF No. 13 at 14.

The Court sees no other evidence that Djadalizadeh has lived in Ohio, and – given that "Retail" suggests working in a store – reacts to Djadalizadeh's argument with some skepticism. The same document lists income from a variety of states, including California, Missouri, Ohio, Wisconsin, Illinois, Texas, Colorado, Utah, Washington, and Louisiana. R. at 171-74. The record does not reflect that Djadalizadeh moved all over the country to work these various jobs for days at a time; instead, it shows that he worked a number of temporary jobs in the greater Chicago area. R. at 58, 179-84. And those locations are contradicted by other evidence in the record. For example, Djadalizadeh listed that he worked at "Landry Seafood House" and described the location as "IL." R. at 184. But according to the DIB sheet, "Landrys Seafood House" is located in Houston, Texas. R. at 174. Djadalizadeh was able to work at White Castle in Illinois, R. at 181, even though according to the DIB sheet White Castle is located in Columbus, Ohio. R. at 174.

Under a much more plausible reading of the record, the location listed on the DIB sheet is some sort of corporate or other address and not the location where Djadalizadeh performed any work.

In addition, the vocational expert testified that Djadalizadeh worked as a store laborer in 1999. R. at 58. Thus the record supports the conclusion that in 1999 Djadalizadeh earned $9,075.69 by working at Luxottica Retail as a store laborer.

Djadalizadeh argues only that the 1999 work was not the store laborer job. Thus the Court considers it uncontested that the 1999 work was substantial gainful activity and "past relevant work." The ALJ's Step Four conclusion is supported by substantial evidence and does not require remand.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment [ECF No. 12] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 17] is granted. The Court affirms the Commissioner's decision that Djadalizadeh has not been under a disability, as defined by the Social Security Act, since June 26, 2009, the date the application for benefits was filed.

**IT IS SO ORDERED.**

                                                                   Harry D. Leinenweber, Judge
                                                                   United States District Court

Date:3/7/2014